F I L E D
Clerk
District Court
FEB 12 2015
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                          Plaintiff,<br>      v.<br><br>RICHARD SULLIVAN BENAVENTE,<br><br>                          Defendant. | Case No. 1:14-cr-00017<br><br>**OMNIBUS ORDER ON<br>PRETRIAL MOTIONS** |

### I.   INTRODUCTION

This order addresses three pretrial motions: (1) the Government's motion *in limine* for a ruling that Defendant Richard Benavente waived the attorney-client privilege between himself and his prior counsel, Mark Hanson (Government's MIL for Pretrial Ruling, ECF No. 14); (2) Benavente's motion *in limine* for a ruling that evidence of his prior conduct in writing an untruthful exculpatory letter for a criminal defendant in another case is inadmissible (Benavente's Rule 404(b) MIL to Preclude Evidence, ECF No. 16); and (3) Benavente's motion to disqualify Assistant United States Attorneys

Garthe Backe and Ross Naughton as percipient witnesses likely to testify at trial pursuant to rules against advocate-witnesses and prosecutorial vouching (Benavente's Motion to Disqualify Counsel, ECF No. 24). The matter came before the Court for a hearing on January 23, 2015. Assistant U.S. Attorney Ross K. Naughton appeared for the Government. Defendant appeared in custody with court-appointed counsel Michael W. Dotts. For the reasons stated on the record (ECF No. 38), the Court denied Benavente's motion to disqualify counsel (ECF No. 24) and to preclude evidence (ECF No. 16.) As for the Government's motion, the Court ordered the parties to file supplemental briefs on the scope of the waiver of attorney-client privilege by February 2, 2015. Both parties timely filed their additional briefs. (*See* ECF Nos. 39, 40.) Based on the review of the record, and after considering the arguments of counsel, the Court now grants the Government's motion for a pretrial order and declares that Benavente made a limited waiver of his attorney-client privilege and that the scope of the waiver encompasses Defendant's private conversation with his attorney during the break in the proffer session on April 25, 2014, as well as all other communications he had with his attorney about the 789-3443 phone number.

## II. BACKGROUND

Benavente is charged with three counts of perjury and one count of obstruction of justice for testimony he gave at trial in *United States v. Raymond B. Roberto,* Crim. No. 1:13-cr-00010, on September 9–10, 2014. (*See* Indictment, ECF No. 4.) The Government alleges that Benavente falsely testified that (1) he used a cell phone with the number 789-3443 in June or July 2013 to call and text minors, (2) he surrendered the phone when he was arrested, and (3) during an April 25, 2014 meeting with investigators, he denied owning the phone and simply agreed with what investigators suggested. (Indictment 2–4). The Government argues that each statement constitutes perjury in violation of 18 U.S.C. § 1623(a), and the overall testimony constitutes obstruction in violation of 18 U.S.C. § 1512(c)(2), (j). Benavente asserts his innocence and argues that he told the truth during his September testimony.

This case emerged from the Government's prosecution of Benavente and others, including Roberto, for allegedly exchanging money and drugs for sex with minors. In February 2014, Benavente pled guilty to sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and promised to cooperate with the Government and testify truthfully about his crime and the criminal involvement of others. (*See United States v. Benavente*, No. 1:13-cr-00008-1, Change of Plea Hearing, ECF No. 23; Plea Agreement 1, 5-6, ECF No. 22.)

In early April 2014, Benavente wrote a letter to the Court stating that he was the owner of a cell phone with the number 789-3443. (*See* Government's MIL Ex. A at 2, FBI 302 Report, ECF No. 14-1.) That number was significant because the Government alleged that the phone had belonged to Roberto, and that text messages associated with that number were used to arrange Roberto's sexual encounters with the minors.

On April 25, 2014, Benavente was interviewed for a proffer session about the 3443 number by FBI agents Haejun Park and Joe McDoulett in the presence of AUSAs Rami Badawy, Garth Backe, and Ross Naughton. (*Id.* at 1.) Benavente was represented by Mark Hanson at the meeting. (*Id.*) At first, consistent with his letter to the court, Benavente stated that he used the 3443 number to contact the minors until his arrest, and had also allowed "Ray King" to use the number for the same purpose. (*Id.*) He advised the FBI that the 3443 SIM card should be in the possession of the local police from his initial arrest. (*Id.*)

However, Benavente changed his tune after being warned of possible criminal charges for lying and after speaking privately with Hanson. (*Id.*) He "confessed to lying about the entire claim of using the 789-3443 cell phone to communicate with the minors." (*Id.*) According to the FBI 302 Report, Benavente stated that he was approached by Roberto in prison and asked to lie on Roberto's behalf. (*Id.*) Benavente lied about the SIM card being in the custody of the local police because the office apparently had a history of misplacing evidence, and accused Ray King of using 3443 because some of the messages between that number and the minors referred to a "Ray." (*Id.*)

Shortly after the April 25, 2014 proffer meeting, Benavente changed his story yet again. In May 2014, Benavente wrote another letter to this Court, again stating that he was the owner of the 3443 number. (*See* Government's MIL Ex. B, Benavente's May 2014 Letter, ECF No. 14-2.) He stated that he only changed his story at the proffer session because he felt pressured by the Government and his lawyer. (*Id.*) ("My lawer [*sic*], Mark Hansen [*sic*], told me that I just FUCKED UP my Plea Agreement. That I need to tell them what they want to hear."). Benavente repeated that story during his testimony on September 9, 2014. (*See* Government's MIL Ex. C, Trial Tr., ECF No. 14-3 ("So when [the Government agents] stepped out, I asked Mark, he just says, you just fucked up your Plea Agreement, man. I can't fucking do anything for you. You better tell them something, tell them what they want to hear.").)

This was not the first time that Benavente had written a letter to a judge about another defendant's culpability. (*See* Benavente's 404(b) MIL 2–6.) In March 2014, Benavente allegedly told the FBI that a few years earlier, he had written a letter to a judge in an attempt to exonerate a defendant charged in the Commonwealth courts with selling drugs. (*Id.* at 3.) Benavente knew his letter was a lie, because he had allegedly been used as a confidential informant during three "buy-bust" operations against the defendant, but agreed to write the letter and deliver it to the defendant's lawyer in exchange for drugs. (*Id.*) When Benavente failed to receive the quantities of drugs promised, he recanted. (*Id.*)

### III. DISCUSSION

#### a. Government's Motion in Limine

The Government contends that Benavente waived the attorney-client privilege with respect to Hanson's advice about the 3443 cell phone during the break in the April 25, 2014 interview. (Gov't MIL 1–5, ECF No. 14.) Benavente argues that he did not waive the privilege, and that if Hanson is called to testify, the Court should prevent any evidence of his advice to Benavente from being elicited. (Opp'n 2–7, ECF No. 20.) Benavente also maintains that Hanson's testimony on the legal advice he provided should be excluded because it is irrelevant and prejudicial. (*Id.* at 7–8.) Because Benavente

4

waived the attorney-client privilege by testifying as to the contents of his attorney's advice at the Roberto trial, the Court will grant the Government's motion, limited to the subject matter of the waiver.

The attorney-client privilege prevents an attorney from disclosing to third parties the advice he gave his client. *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (stating that the privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice"). The privilege belongs to the client, and may only be appropriately waived with his permission. *In re Subpoenas Duces Tecum*, 978 F.2d 1159, 1162 (9th Cir. 1992). However, "it has been established law for a hundred years that when the client waives the privilege by testifying about what transpired between her and her attorney, she cannot thereafter insist that the mouth of the attorney be shut." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 17 F. Supp. 3d 400, 405 (S.D.N.Y. 2014) (internal quotation marks omitted); *United States v. Mendelsohn*, 896 F.2d 1183, 1188–89 (9th Cir. 1990) (finding that a defendant waived his right to invoke the attorney-client privilege when he disclosed to a detective advice he had allegedly received from his attorney). Such a waiver extends even to undisclosed communications or information so long as the waiver was intentional, the disclosure concerned the same subject matter as the undisclosed communications or information, and fairness requires that they be considered together. Fed. R. Evid. 502(a)[1]; *see Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996) (stating that fundamental fairness requires that a waiver include the subject matter of the advice given to prevent a privilege holder from revealing only favorable evidence and suppressing less favorable evidence).

---

[1] The Rule provides:
> When a disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege . . . , the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

5

This case presents textbook waiver and satisfies the criteria of a Rule 502(a). At the Roberto trial, Benavente volunteered the contents of his lawyer's communications during the break at the April 25, 2014 proffer meeting. (*See* Government's MIL Ex. C, Trial Tr., ECF No. 14-3) ("So when [the Government agents] stepped out, I asked Mark, he just says, you just fucked up your Plea Agreement, man. I can't fucking do anything for you. You better tell them something, tell them what they want to hear."). He also intentionally disclosed his confidential communication with his attorney in the May 2014 letter. (Government's MIL Ex. B, Benavente's May 2014 Letter.) He now wants to preclude the Government from obtaining any undisclosed communications or information concerning the same subject matter—the use of the 3443 telephone number. *See* Fed. R. Evid. 502(a)(2). To the extent that the Government seeks to examine Hanson about the advice he gave to Benavente during the break, Benavente cannot now invoke privilege. *See Mendelsohn*, 896 F.2d at 1188-89. Fairness requires that the Government be allowed to question Hanson as to communications about the 3443 number. Fed. R. Evid. 502(a)(3); *See Tennenbaum*, 77 F.3d at 341.

Benavente argues that the Court should, at most, find that his testimony represented a partial waiver of the privilege, and that communications between himself and Hanson that are not part of the "same subject matter" of the disclosure should continue to be treated as privileged. (*See* Benavente Supp. Br. 3–7, ECF No. 39.) In particular, Benavente would limit the waiver to (1) Hanson's alleged statement that Benavente messed up his plea agreement, (2) Hanson's alleged statement that Benavente should tell the Government agents what they wanted to hear, and (3) whether there was any basis for Benavente to feel threatened. (*Id.* at 7). The Court agrees that the scope of Benavente's waiver should be narrowly construed to his disclosure. *See Fed. R. Evid. 502(a); United States v. Skeddle*, 989 F. Supp. 917, 919 (N.D. Ohio 1997) (stating that the subject matter of a waiver is to be construed narrowly). However, the policy of the waiver rule counsels against the Court allowing Benavente to selectively waive the privilege and offer a version of events beneficial to his case while preventing the Government from challenging his account or disclosing unfavorable facts. *See Board of Trustees of Stanford Univ. v. Roche Melecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006); *John Wiley &*

*Sons, Inc. v. Book Dog Books, LLC*, 17 F. Supp. 3d 400, 406 (S.D.N.Y. 2014) (considering the relevance of the subject matter to the underlying case to aid in determining whether fairness requires waiver of undisclosed information). Here, the proper scope of waiver necessarily includes communications about the 3443 number.

Benavente also urges the Court to deny the motion because Hanson's advice is not relevant to the current proceedings and is highly prejudicial. (Opp'n 5-7); (*see* Benavente Supp. Br. 8.) The Court disagrees. Hanson's advice is relevant because it informs *Benavente's choice* after the break to recant ownership of the 3443 number. If Hanson told Benavente to lie, as Benavente's testimony plausibly suggests, then Hanson's testimony supports Benavente's theory of the case, i.e., that he told the truth before the break and on the witness stand at the Roberto trial, but lied under pressure from his then-attorney and the Government. (Opp'n 7.) Of course, if Hanson told Benavente to be honest, and Benavente adjusted his behavior accordingly, then Benavente's change of story after the break supports the Government's theory that Benavente was lying before the break and during the Roberto trial. Because Hanson's testimony is relevant to Benavente's motivation and whether he told the truth or not—an important consideration for the obstruction and perjury charges—it is admissible.

Benavente also argues that the jury may give unfair credence to any testimony from Hanson tending to show that Benavente did not seem nervous or threatened, even though Hanson would have no way of knowing Benavente's mental state. (Benavente Supp. Br. 8.) Even assuming that a jury might view Hanson's testimony as more credible than it should, based on the attorney-client relationship, that risk does not substantially outweigh the likely probative value of Hanson's testimony about what he perceived with respect to Benavente's defense of feeling threatened. *See* Fed. R. Evid. 403 (stating that a court may exclude relevant evidence "if its probative value is substantially outweighed" by likely prejudice).

The Court will therefore grant the Government's motion *in limine* with the limitation that the attorney-client privilege protects communications between Benavente and Hanson outside the context of the 3443 number.

*b. Benavente's 404(b) Motion in Limine*

Benavente asks the Court to preclude the Government from presenting any evidence of his "having written an exculpatory letter on behalf of a criminal defendant facing trial in local court in exchange for methamphetamine, then retracting that letter when Defendant was provided less methamphetamine than he was promised." (Benavente Mot. in Limine 1, ECF No. 16). Benavente argues that Federal Rules of Evidence 404(b) and 403 prohibit the evidence from being admitted. At the January 23, 2015 hearing, the Court denied the motion. (Min. Entry, ECF No. 38.)

Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence is admissible under Rule 404(b) if it (1) proves a material element of the crime charged, (2) shows similarity between the prior conduct and the crime charged, (3) is based on sufficient evidence, and (4) is not too remote in time. *United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994). "If the evidence meets this test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000).

Here, the evidence is admissible for a non-character purpose, is relevant to the crime charged, and may be properly admitted with a limiting instruction. The FBI 302 Report from the April 25, 2014 proffer meeting says that Benavente wrote an exculpatory letter for Roberto—stating that Benavente used the incriminating 3443 number rather than Roberto—and worked with Roberto's attorney to send it to the Court. (Government's Mot. in Limine Ex. A, FBI 302 Report, ECF No. 14-1.) At that meeting, Benavente admitted that the letter was a fabrication. (*Id.*). Similarly, the evidence Benavente seeks to suppress also indicates his willingness to falsely exculpate other criminal defendants by writing a letter to a judge and having it delivered through the defendant's attorney.

Although the evidence could suggest the prohibited inference that Benavente has a character for dishonesty and acted in accordance with that character when he allegedly perjured himself at the Roberto trial, it also shows intent, plan, and modus operandi for obstructing justice. *See* Fed. R. Evid. 404(b)(1)-(2). In other words, the evidence supports the notion that this particular pattern of behavior is how Benavente operates. His past willingness to falsely exculpate a defendant closely matches what he is accused of doing here. He alleges that he wrote the first falsely exculpatory letter only "several years ago," and the FBI 302 Report and Benavente's testimony at the Roberto trial—where he admitted to writing the letter—provide sufficient evidence that the past act really happened. Additionally, the alleged falseness of both exculpatory letters ties the evidence to this case. *See Hinton*, 31 F.3d at 822. The fact that in one instance Benavente was motivated to change his story by his drug habit, and in the other by pressure from his attorney, is not consequential. In both circumstances, according to Benavente, his will was overborne. It is another similarity.

Finally, Rule 403 is no bar here because the evidence is extremely relevant to what Benavente is accused of doing here—obstructing justice. Its probative value exceeds the danger of unfair prejudice, and the Court can instruct the jury on the proper scope of its consideration if the evidence is admitted. *See* Fed. R. Evid. 403.

*c. Benavente's Motion to Disqualify AUSAs*

Benavente next argues that, as percipient witnesses to the April 25, 2014 interview, Backe and Naughton should be disqualified from prosecuting this case because of the advocate-witness rule and the rule against vouching. (Benavente Mot. in Limine 2-5, ECF No. 24.) The Government responds that thoee rules do not apply to the facts of this case. (Opp'n 1–5, ECF No. 30.) Although there is some risk of vouching, the prosecutors can avoid it by exercising caution, and the Court will be vigilant. The Court denied the motion at the January 23, 2015 hearing. (Min. Entry, ECF No. 38.)

The advocate-witness rule prevents an attorney from appearing as a witness and an advocate in the same litigation. *United States v. Prantil*, 764 F.2d 548, 552–53 (9th Cir. 1985) ("there is a very real risk that the jury, faced with the exhortations of a witness, may accord testimonial credit to the

prosecutor's closing argument"). However, before a defendant may disqualify a prosecutor, he must demonstrate a "compelling need" for the prosecutor's testimony. *United States v. Tamura*, 694 F.2d 591, 601 (9th Cir. 1982); *cf. United States v. Edwards*, 154 F.3d 915, 923 (9th Cir. 1998) (noting that because the prosecutor himself stumbled upon highly probative evidence in the middle of the trial while examining an exhibit, he became a "crucial witness"). Accordingly, if other sources of the evidence sought from the prosecutor are available, a court should not disqualify the attorney. *Prantil*, 764 F.2d at 552 ("Both the quality and quantity of the alternative sources of evidence are proper subjects for comparison with that sought directly from the participating prosecutor.").

Here, the advocate-witness rule does not bar Backe and Naughton from prosecuting this case because neither of them could present evidence not already available to Benavente through FBI agents Park and McDoulett. *See Prantil*, 764 F.2d at 551–52. Benavente has no compelling need for Backe and Naughton's testimony; therefore, they may serve as prosecutors and avoid the advocate-witness rule.

Benavente argues that if Hanson "could be called as a witness because the proffer session he attended was such a 'critical event,' even though there were other witnesses such as law enforcement officers present who could testify, then the Government's attorneys also present could be called as witnesses." (Reply 3, ECF No. 37.) There are several problems with that argument. First, calling Hanson would not run athwart the advocate-witness rule because he no longer represents Benavente, and would therefore not be acting in an advocacy position during trial, unlike the prosecutors. Second, based on its motion *in limine*, the Government would likely call Hanson to testify about his *private* conversation with Benavente outside the presence of law enforcement. As such, even if Hanson did still represent Benavente, as the only witness to the events in question, the Government could potentially disqualify Hanson based on a "compelling need." *See Prantil*, 764 F.2d at 554.

Benavente next argues that the prosecutors should be disqualified based on anti-vouching concerns. (Reply 3-7.) Vouching typically occurs when "(1) the prosecutor places the prestige of the government behind a witness by expressing his or her personal belief in the veracity of the witness, or

10

(2) the prosecutor indicates that information not presented to the jury supports the witness's testimony." *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002); *see Edwards*, 154 F.3d at 922 (stating the anti-vouching policies are "designed to prevent prosecutors from taking advantage of the natural tendency of jury members to believe in the honesty of lawyers in general, and government attorneys in particular, and to preclude the blurring of the fundamental distinctions between advocates and witnesses") (internal quotation marks omitted). For example, in *Hermanek*, the Ninth Circuit found improper vouching in the prosecutor's identification of himself with the investigators during summation. 289 F.3d at 1098 ("*We* had a wiretap"). In *Edwards*, the Court noted that, because the prosecutor had discovered a key piece of evidence connecting the defendant to the contraband in the middle of trial, he engaged in vouching by simply trying the case. 154 F.3d at 922. ("[A]ll the prosecutor had to do in order to convey to the jury his belief—indeed his representation, based on personal knowledge—that the receipt was legitimate and that it was found on the up-and-up, was simply to continue to play the role of objective prosecutor.").

Here, the risk of vouching is not so great as to require disqualification of the prosecutors. It is not the involvement of the prosecutors in the investigation of a crime that leads to improper vouching, but the attempt to leverage that involvement into an unfair advantage. The prosecutors in *Hermanek* were not wrong to participate to some extent in the investigation; they were wrong to use that participation to vouch for the case. 289 F.3d at 1098, 1099 ("Their statements conveyed to the jury a message that prosecutors personally believed, based on their own observations, in the integrity and good faith of the investigators.") (internal quotation marks omitted). In other words, the vouching was avoidable. *Cf. Edwards*, 154 F.3d at 923 ("[W]e conclude that when a prosecutor is personally involved in the discovery of a critical piece of evidence, when that fact is made evident to the jury, and when the reliability of the circumstances surrounding the discovery of the evidence is at issue," any participation by the prosecutor constitutes improper vouching). There is no such doubt in this case as there was in *Edwards*. If the prosecutors conduct themselves with discretion, despite their

involvement in the April 25, 2014 meeting, they need not fall victim to the anti-vouching rule. Benavente is correct that this case poses a risk of vouching, but not that it is inevitable.

### IV. CONCLUSION

For the reasons stated above, the Government's motion *in limine* is granted, Benavente's motion *in limine* is denied, and Benavente's motion to disqualify the prosecutors is denied.

SO ORDERED this 12th day of February, 2015.

/s/ Ramona V. Manglona
RAMONA V. MANGLONA
Chief Judge